OPINION OF THE COURT
Robert F. Doran, J.
By order dated February 13, 1979, the Commissioner of Health was, pursuant to subdivision 2 of section 2810 of the Public Health Law, appointed by this court as receiver of the Kings Harbor Care Center (Kings Care), a 360-bed, residential, skilled nursing facility and Kings Harbor Manor Facility (Kings Manor), a 360-bed, health-related facility. At 11:45 a.m. on February 14, 1979, the receiver presented the order to the administrator of the facility and took control at that time.
By order to show cause dated February 16, 1979, a motion by the petitioners was heard on February 28, 1979. Part of the *712 order to show cause requested that the receiver be enjoined and restrained from drawing from, removing or otherwise interfering with or utilizing any funds in any bank account utilized by the petitioners in connection with their operation of Kings Care and Kings Manor. When the receiver took control of the facility on February 14, 1979, there was a cash balance of $66,454 in the petitioners’ operating account. Also a deposit was made the same day in the amount of $4,037 bringing the cash balance up to $70,491 in the petitioners’ accounts.
The receiver also discovered that two checks had recently been drawn on petitioners’ accounts in the approximate amounts of $240,000 and $140,000, but that neither check had been recorded, i.e., there was no indication on the petitioners’ books of what facility expenses these checks were to cover. The receiver took steps to stop payment on the two checks. However, the $240,000 check had already cleared. The receiver, however, was able to stop payment on the $140,000 check.
The $140,000 check had been made out to the order of "Kings Harbor Care Center” and had been indorsed for deposit into a bank account by that name in the State of Illinois. Several checks had been written against the $140,000 balance in the Illinois account for expenses of petitioners’ operation of Kings Care and Kings Harbor.
Because of the fact that several checks had been written against the $140,000, the court is constrained to decide this part of the order to show cause as expeditiously as possible.
The court concludes that the petitioners are entitled to recover the $70,491 and also the sum of $140,000.
Section 2810 (subd 2, par c) of the Public Health Law provides in part as follows: "Any receiver appointed pursuant to this subdivision shall have all of the powers and duties of a receiver appointed in an action to foreclose a mortgage on real property, together with such additional powers and duties as are herein granted and imposed. * * * He shall collect incoming payments from all sources and apply them to the costs incurred in the performance of his functions as receiver. * * * The receiver shall compensate the owner or owners of any goods held in inventory for those goods which he uses or causes to be used by reimbursing the costs of such goods, except that no such compensation shall be made for any such *713 goods for which the owners or operators of the facility have already been reimbursed.”
As a general rule, a receiver in foreclosure may not recover from the owner for rents accruing and collected by the owner prior to the appointment and qualification of the receiver (Carmody-Wait 2d, NY Prac, §§ 92:485, 487, pp 453-458).
It would appear, therefore, that the receiver had no valid claim to the $70,491 balance on hand in the petitioners’ accounts as of the day the receiver took over. Clearly, the receiver had no authority to stop payment on the $140,000 check. Indeed, there had been a tacit understanding on arguments concerning the appointment of the receiver that no such action would be taken by the receiver.